IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JILL CONNOR, | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **C.A. No. 07-366** |
| v. | : | |
| | : | **JURY TRIAL DEMANDED** |
| NEW CASTLE COUNTY, GUY H. SAPP, | : | |
| individually and in his official capacity, and | : | |
| CHARLOTTE L. CROWELL, individually and | : | |
| In her official capacity, | : | |
| | : | |
| | : | |
| **Defendants.** | : | |

## DEFENDANTS CROWELL, SAPP AND NEW CASTLE COUNTY'S MOTION TO STAY

Defendants, Crowell, Sapp and New Castle County, through their undersigned counsel submit this Motion to Stay the litigation in the above-captioned matter for the reasons set forth herein.

### PRELIMINARY STATEMENT

In January 2002, Jill Connor ("plaintiff"), began her employment with the New Castle County Police Department ("police department" or "County") as a police officer. Plaintiff remained with the police department until her termination on August 7, 2006, due to plaintiff's inability to perform her job as a police officer. Upon her termination, plaintiff pursued various administrative remedies to reinstate her employment under her union contract through the Fraternal Order of Police ("FOP") Lodge 5 and the Collective Bargaining Agreement ("CBA") between the FOP and the County. Specifically, on

September 6, 2006, Plaintiff initiated grievance proceedings through her union[1] pursuant to paragraph 13(a) of the CBA. (as attached as Exhibit 1. Plaintiff's home address was redacted from Exhibit 1 by Defendants' counsel. See Exhibit 2 which is the Grievance procedure contained in excerpts from the CBA). Plaintiff's contractual grievance proceedings are on-going. Plaintiff received a Hearing Officer decision favoring her contractual position at Step III. The County has appealed this decision to Step IV, which is final and binding arbitration pursuant to CBA paragraph 17(a)-(f) (as attached as Exhibit 3). The arbitration is to commence on November 13, 2007. (as attached as Exhibit 4).

On June 11, 2007 Plaintiff filed the instant lawsuit, which includes contractual, state law based claims. Plaintiff now seeks to litigate these unresolved (yet now amply developed through the grievance procedure) arbitrable state law based contract claims in a federal forum without permitting the binding arbitration step to finalize. Accordingly, plaintiff should not presently be permitted to adjudicate her contractual, state law based claims, in federal court. For the reasons set forth below, a stay of the entire litigation is, thus, appropriate.

## DISCUSSION

The courts in the Third Circuit have ordered a Stay in litigation pending the resolution of the arbitration process, both in the context of labor and non-labor arbitrations. (See *Local Lodge No. 595 of District No. 152, International Association of Machinists v. Howe Sound Company (Inc.), Pennsylvania Electric Steel Casting Division,*

---

[1] For purposes of this Motion to Stay, Defendants do not believe that the union, i.e., FOP Lodge #5, is a needed or indispensable party, as Plaintiff is the only grievant and is the real party in interest. However, if it is determined that it is necessary to add the union as a party to this litigation, Defendants hereby request leave of the court to join the union.

*350 F.2d 508* and *Farm Family Mutual Insurance Company v. Lloyd J. Blevins, 572 F.Supp.397*)  There is a strong public policy in Delaware favoring arbitration.  (See *James Julian v. Raytheon Service Co., Del.Ch., 424 A.2d 665, 667 (1980).*

The essence of the present matter implicates the rights of the parties under the terms of the applicable CBA as permitted and guided by state and county law.    This policy favoring arbitration is further recognized in *Blevins, supra,* as well as in case law in the state courts in Delaware. (See *Board of Education of Sussex County Vocational-Technical School District v. Sussex Tech Education Association and Robert L. Swiger, 1998 WL 157373 (Del.Ch.)* and *Delaware Public Employees, et al. v. New Castle County, 1994 WL 515291 (Del.Ch.)* (See Appendix 1)[2].  Clearly, pursuant to the CBA governing the employment relationship between the County and plaintiff, arbitration is a bargained for and expected remedy to resolve employment disputes between the parties. In fact, plaintiff has availed herself of the remedies provided by the CBA yet now seeks to deny the County access to the very same process. To that extent, plaintiff must be equitably estopped from circumventing arbitration of her state law contract claims.[3]

The power to stay proceedings is "incidental to the power inherent in every court." *Landis v. N. Amer. Co.*, 299 U.S. 248, 254-55 (1936).  This power to stay is to be used judiciously, and it requires the Court to "weigh competing interests and maintain an even balance." *Id.* at 255. A district court's decision whether to stay a proceeding may be

---

[2] The State of Delaware Public Employment Relations Board (PERB) is empowered to construe the *Public Employment Relations Act, 13 Del. C. Chapter 13,* and the *Police Officers' and Firefighters' Employment Relations Act 19 Del. C. Chapter 16,* which are substantively identical.  As such, the above-cited case law decided under Chapter 13 provisions is controlling precedent with respect to Chapter 16 provisions.
[3] In the context of state law equitable claims, it is a time-honored principle that equity will not hear a complainant stultify [herself] by complaining against acts in which [she] participated or of which [she] has demonstrated [her] approval by sharing in their benefits.  *Danvir Corp. v. Wahl,* 1987 WL 16507 (Del. Ch.) at *5 (quoting *Gottlieb v. McKee,* 107 A.2d 240, 244 (1954)).   A plaintiff should not be permitted to participate knowingly in acts and then come into court to deny them later when it is not to her advantage. *Morente v. Morente,* 2000 WL 264329 (Del. Ch.) at *2, n.9.

3

guided by a consideration of the following factors: (1) the identity of the parties and issues in both actions; (2) the adequacy and extent of relief available in the alternative forum; (3) the likelihood of prompt disposition in the alternative forum; (4) the convenience to the parties, counsel, and witnesses; (5) the possibility of prejudice to the party as a result of the stay; and (6) the promotion of judicial efficiency. *Balfour v. Gutstein*, 547 F.Supp. 147, 148 (E.D.Pa.1982); *Nigro v. Bumberg*, 373 F.Supp. 1206, 1212-13 (E.D.Pa.1974). When applied to the present case, all six factors weigh heavily in favor of granting the present Motion to Stay pending the conclusion of arbitration of state law based contract claims.

First and foremost, the parties to this federal action as well as the central issues in the matter, *sub judice*, are the same issues and parties to the pending labor arbitration. (*See* supra.)  If the parties to an arbitration proceeding and a related federal lawsuit are different, (and the County submits that, in this case, they are not different) such a factor weighs against the Court's entry of a stay. *See Braun Media Svcs., Inc. v. Taylor*, C.A. No. 1:06-CV-02002, 2006 WL 3484324 at *3 (E.D.Pa. 2006). In the present case, given the parties and central issues to both actions are the same, a stay is appropriate. Second, the resolution of the administrative remedies (which plaintiff initiated as a grievance on September 6, 2006 under the applicable CBA) may afford, in substantial part, the relief that Plaintiff requests in the present complaint.

The third factor for stay consideration clearly warrants in favor of the County. As arbitration is to commence on November 13, 2007, the parties are assured of a disposition of the contract claims in this matter, which may ultimately determine the majority of

issues and relief sought by plaintiff via her instant federal suit. The fact that such a disposition is available to both parties buttresses the need to stay the present litigation.

The fourth factor, convenience to the parties, counsel and witnesses further weighs in favor of staying the federal suit. In the present matter, the same witnesses, same counsel and same anticipated evidence are involved. Unless this matter is stayed, the parties will continue to engage in adversarial proceedings on two fronts, with duplicative, costly and timely discovery, and the potential for inconsistent adjudications. Since the grievance process has now been scheduled for the final and binding step, the issues for the arbitrator to consider are already defined for adjudication. As such, the parties are able to proceed to arbitration and resolve that process in a manner more convenient than proceeding with contemporaneous federal litigation.

The fifth factor to consider is the prejudice to the parties by issuance of a stay. As noted above, the parties have engaged extensively in the grievance proceedings and are on the cusp of a final determination in the administrative venue, that being the arbitration hearing. As plaintiff has seen fit to avail herself of the benefits of administrative proceedings, she may not now evade the arbitration process by a claim of prejudice. Again, there is no prejudice to plaintiff while she is engaged in the very grievance procedure she initiated.

The last and most significant factor is the promotion of judicial efficiency. Certainly the economy and equities of the situation before the Court favor the resolution of the majority of plaintiff's issues in one forum. The pending arbitration likely will resolve the bulk of plaintiff's claims for relief. After the expeditious resolution of her administrative remedies, plaintiff will be in a far better position to evaluate what remains

of her federal case, if anything.  Should the arbitration process leave either party in a position where the litigation of any claim or defense in this court is necessary, the adjudication of those claims can proceed with all deliberate speed.

**WHEREFORE,** Defendants respectfully request that this Honorable Court  grant the Motion to Stay.  Further, Defendants request that this Court stay the litigation and the filing of a formal responsive pleading to the Complaint until this Motion has been decided, and until the contract claims have been addressed in the arbitral forum.

NEW CASTLE COUNTY LAW DEPARTMENT

By:   /s/  Eric Leonard Episcopo
Kristopher T. Starr (DE Bar I.D. No. 4004)
Assistant County Attorney
Eric L. Episcopo (DE Bar I.D. No. 2258)
First Assistant County Attorney
87 Read Way, New Castle, DE 19720
Tel:  (302)395-5130

Dated: August 10, 2007    *Attorneys for Defendants*

# EXHIBIT 1

# New Castle County
# Employee Grievance Form

RECEIVED
SEP 8 2006
NCC
HUMAN RESOURCES

DISTRIBUTION- PART 1
Original- 2 copies Department Director
1 copy-Union Steward

Today's Date: September 7, 2006

Refer to: FoP/06-19

## STEP 1

### Instructions

PART 1-Employee completes the original and three copies of this form. Send original and two copies to the Director of **YOUR DEPARTMENT.**

Part 2- The Director of the Department will give his decision within _____ working days after the grievance has been submitted to him. The original copy of the form is to be returned to the employee. One copy is sent to the area Steward.

| EMPLOYEE'S NAME<br>Pfc. Jill Connor 2635 | DEPARTMENT<br>Police | SECTION OF CONTRACT INVOLVED<br>F.O.P. CBA Sec. 74 Merit System<br>(80) |
|---|---|---|

CHECK APPLICABLE BOX

☐ No decision has been rendered in the grievance discussed with the Director of the Dept. on _____

☐ The Grievant is not satisfied with the disposition discussed with the Director of the Dept. on _____

☐ System-wide Grievance

**DESCRIPTION OF THE GRIEVANCE AND REMEDY SOUGHT: See Attached**

EMPLOYEE'S SIGNATURE _Jill Connor_

AREA STEWARD'S SIGNATURE _Ca Marelli 2286_

HOME ADDRESS

## PART 2

DISTRIBUTION- PART 2

Original-Employee
1 copy-Union Steward

Date received by Director of Department

Decision of Director:

| Date decision presented to Grievant: | Signature |
|---|---|

Grievance: Grievant, Pfc. Jill Connor, contracted an illness between the months of September & October 2004 in performance of her work as a police officer. As of August 7, 2006 the County terminated Pfc. Connor from employment based on her inability "to perform the functions of a police officer". This is in contrast with Merit System Sec. 26.03.904 B "Disability in the course of employment". This section indicates that "the employee may be given other duties with the County government for the period of recuperation".

Remedy: Honor Merit System Sec. 26.03.904 B. As of August 17, 2006 Pfc. Connor was cleared by her physician to work an 8hr day performing sedentary work. Pfc. Connor should be assigned to a position that allows her to work and continue to recuperate.

**MERIT SYSTEM RULES**

(80) In the administration of the matters covered by this
     Agreement, the County Government and the FOP and its
     members are governed by the applicable rules and
     regulations of the New Castle County Merit System
     Ordinance, adopted pursuant to and in accordance with
     Delaware 9C, Section 1451, and policies of the County which
     do not conflict with the terms of this agreement.

### Sec. 26.03.904. Disability in course of employment.

A permanent, probationary or limited-term employee who is temporarily disabled in the line of duty shall receive full pay for the period of his or her disability without charge against his or her vacation or sick leave, subject to the following conditions:

A.  The disability must have resulted from an injury or illness sustained directly in the performance of the employee's work, as determined by the Industrial Accident Board of the State.

B.  If incapacitated for his or her regular employment, the employee may be given other duties with the County government for the period of recuperation. Unwillingness to accept such an assignment as directed by the department general manager or the Chief Human Resources Officer will make the employee ineligible for disability leave during the time involved.

C.  A physician selected by the County shall determine the physical ability of the employee to continue working or to return to work.

D.  The County shall pay the recipient of worker's compensation checks the difference between the recipient's salary and the amount of worker's compensation.

(Ord. No. 98-047, § 1(26-369), 5-12-1998)

### Sec. 26.03.905. Non-work-related disability.

A department general manager may direct any employee under his or her jurisdiction to be examined by a physician designated by the County. If a disability of any kind is discovered which impairs the effectiveness of the employee or makes his or her continuance on the job a danger to himself or herself or others, the following action shall be taken:

A.  If the disability is correctable, the employee shall be allowed specified time to have it corrected. If the employee fails to take steps to have the disability corrected within the specified time allowed by the physician, the employee shall be subject

to disciplinary action or dismissal. If a reasonable accommodation is necessary to enable the employee to perform the essential functions of the job, reasonable attempts will be made to adjust the situation through such accommodation.

B.  If, in the opinion of the examining physician, the disability cannot be corrected, the appointing authority shall attempt to place the employee in another position which he or she can perform satisfactorily. If that step cannot be accomplished successfully, the appointing authority shall take steps to separate the employee from County service, preferably through retirement or layoff.

(Ord. No. 98-047, § 1(26-370), 5-12-1998)

### Sec. 26.03.906. Loss of job requirements.

Any employee who is unable to do his or her job adequately because of loss of a necessary license or other requirement shall be separated by a layoff, leave of absence or dismissal, at the discretion of the Chief Human Resources Officer. Prior to any action being taken by the County, every effort will be made to allow the employee to remedy the situation in a reasonable time. Failure of an employee to report such loss shall be cause for disciplinary action.

(Ord. No. 98-047, § 1(26-371), 5-12-1998)

### Sec. 26.03.907. Dismissals.

Dismissals are discharges or separations made for delinquency, misconduct, inefficiency or inability to perform the work of the position satisfactorily. All dismissals are made upon the recommendation of the appropriate department general manager through the Chief Human Resources Officer. No dismissal of a permanent employee shall take effect until an opportunity for a pretermination hearing is given the employee and the department general manager gives to such employee a written statement setting forth the reasons therefor and files a copy of such statement with the Chief Human Resources Officer. An employee who has been dismissed shall be paid for his or her accumulated vacation but shall not be paid for accumulated sick leave and shall not

# EXHIBIT 2

F.O.P., LODGE 5

County agrees to make available to the FOP such records as the County and the FOP deem appropriate.

(d) It shall be the firm policy of the County to assure every such employee an unobstructed use of his/her grievance procedure without fear of reprisal or without prejudice in any manner to his/her professional status.

(e) Time limits as set forth herein may be extended, in writing, by Agreement of the parties.

(f) The workday as used in this grievance procedure shall be defined as Monday through Friday excluding holidays.

## GRIEVANCE SUBMISSION

(13) Grievances shall be processed as rapidly as possible in accordance with the following procedure:

(a) Employees shall have the right to represent themselves with the County, and have such grievance(s) adjusted without the intervention of the exclusive bargaining representative, provided the adjustment is not inconsistent with the terms of the Agreement or the rights of other employees then effective and a grievance representative shall be present. Such rejection of FOP representation shall be evidenced by the employee on a written waiver form executed by the employee and submitted to the FOP.

(b) Grievances will not be considered under the grievance procedure unless signed by the Chairperson of the Grievance Committee or the grievance representative and presented within twenty (20) days of the grievant's scheduled workdays after the employee becomes aware of the circumstances giving rise to the grievance, but in no case shall exceed twenty (20) working days. In the event that the employee seeks, pursuant to Section 13(c), an informal resolution of the issue that may constitute a grievance, the time for filing a grievance is extended for an additional five (5) working days after the employee is notified

of the Chief of Police's proposed, informal resolution.

(c) Any employee may seek resolution of any issue that may be the subject of a grievance by informally discussing the issue with the Chief of Police or designee. After discussion with the employee, the Chief of Police or designee may propose an informal resolution. If accepted by the employee, no grievance may be filed. If not accepted, the employee shall have five (5) working days from the date he/she is notified of the resolution to file a formal grievance.

(14) Step One: Chief of Police or Designees

(a) Any employee or one designated member of a group of employees having a grievance and/or his/her or their grievance representative shall file a grievance signed by the employee(s) and present it to the Chief of Police or designee. The Chief of Police or designee shall have five (5) working days from date of receipt of the grievance in which to schedule a Step One hearing. The Step One hearing shall be held within twenty (20) working days of receipt of the grievance by the Chief of Police or designee. A written decision on the matter shall be provided to the grievant by the Chief of Police or designee within fifteen (15) days of the Step One hearing.

(b) If the affected employee is dissatisfied with the decision of the Chief of Police or designee, he/she or his/her designated grievance representative may appeal to Step Two. An appeal to Step Two must be filed within five (5) working days of the date of the Step One written decision.

(15) Step Two: Chief Administrative Officer, Chief Human Resources Officer and Director of Public Safety

(a) Within thirty (30) working days of the receipt of any appeal from a Step One grievance decision, the Chief Administrative Officer, the Chief Human Resources Officer and the Director of Public Safety shall hold a Step Two hearing. The Chief Administrative Officer, Chief Human Resources Officer, and the Director of Public Safety shall conduct investigations, appoint

F.O.P., LODGE 5

advisory committees, require the attendance of members
of the department as witnesses and require the
production or examination of records, books, papers
and other documents relating to the matter as they
deem necessary. The FOP Grievance Committee, through
the Chief Human Resources Officer, shall have the
authority to require the attendance of members of the
department as witnesses and require the production or
examination of records, books, papers and other
documents relating to the matter.

(b)   The employee, grievance representative, and/or members
of the grievance committee and/or counsel shall
present the grievance at the Step Two hearing.

(c)   The Chief Administrative Officer, Chief Human
Resources Officer, and Director of Public Safety
shall submit their decision in writing, on the
grievance within ten (10) working days and shall affix
their signatures thereto.

(16) Step Three: Police Grievance Hearing Officer

(a)   If the grievance is to be appealed from Step Two, the
FOP shall have the right, through the chairperson of
the grievance committee and/or president of the FOP,
to appeal to the police grievance hearing officer for
a hearing of the case.  Request for such a hearing
shall be made to the Chief Human Resources Officer in
writing with a copy to the police grievance hearing
officer within fifteen (15) working days after the
decision has been submitted in Step Two of the
grievance procedure.

(b)   The police grievance hearing officer shall consist of
one individual.  This individual shall be chosen by
the County with consultation from the FOP.  The FOP
has the right to approve or disapprove the individual
selected. A selection process shall continue until the
County selects an individual acceptable to both
parties.  The individual shall hear grievances and
shall render decisions based upon terms and conditions
of the Agreement.  Said individual may not make any
decision contrary to, inconsistent with, or modifying
or varying the terms of this Agreement.  Grievances
will be heard on a monthly basis or on an as needed

F.O.P., LODGE 5

basis if monthly meetings are viewed to be unnecessary by the parties and by the hearing officer. The time and place of the hearing shall be set by the hearing officer. The hearing may be attended by the aggrieved employee, chairperson of the grievance committee, President of the FOP, the appropriate grievance representative and/or counsel. The County may have in attendance such persons as they deem necessary for the presentation of the County's position. The hearing officer shall submit his/her decision in writing to the FOP and to the County within five (5) working days following the close of the hearing.

(c)  The FOP and the County shall review the police grievance hearing officer at the beginning of each contract year, and on the complaint of either party, the hearing officer shall be replaced.

(d)  It is agreed that the following persons may not serve as hearing officer in Step Three of the grievance procedure:

-  current or former county executives, council personnel, elected officials; or

-  current or former chiefs of police for New Castle County; or

-  practicing attorneys, officers or grievance representatives of the FOP.

(17) Step Four: Appeal to Arbitration

(a)  The decision of the Step Three police grievance hearing officer following its hearing may be appealed to arbitration. Notice of appeal of such case to arbitration shall be filed with the other party within ten (10) working days after the final decision has been given in writing by the police grievance hearing officer in Step Three of this grievance procedure; otherwise, the case shall be considered settled on the basis of the decision so given.

(b)  The arbitrator shall be selected from the membership of the American Arbitration Association by mutual agreement of the County and the FOP. In the event the

F.O.P., LODGE 5                                                    12

parties cannot agree on a selection within ten (10)
working days after it is known that resort to
arbitration must be had, such arbitrator shall be
selected under the Voluntary Labor Arbitration Rules
of the American Arbitration Association.

(c)  The decision of the arbitrator shall be final and
binding on the parties, and the arbitrator shall be
requested to issue his/her decision within thirty (30)
days after the conclusion of testimony and argument.

(d)  The arbitration award shall be in writing and shall
set forth the arbitrator's opinion and conclusions on
the issue(s) submitted.   The arbitrator shall be
without power to make any decision contrary to or
inconsistent with, or modifying or varying in any way,
the terms of this Agreement.   The arbitrator shall
have no power to establish or change any wage rate or
the job content of any classification or modification
of any wage schedule.

(e)  In case of a grievance involving any continuing or
other money claim against the County, no award shall
be made by the arbitrator, which shall allow any
alleged accruals prior to the date when such grievance
shall have been presented to the County in writing
except in a case whereby the employee or the FOP due
to lack of knowledge could not know prior to that date
that there were grounds for such a claim.   In such
cases, retroactive claims shall be limited to a period
of thirty (30) calendar days prior to the date the
claim was first filed in writing.

(f)  The fee for the arbitrator's service and expenses, the
administration fee of the American Arbitration
Association, and the cost of the proceeding shall be
borne equally by the County and FOP.   If either party
desires a verbatim record to be made, it shall pay for
the record and supply the arbitrator with a copy.
Should the other party desire a copy(s) it can be
obtained at the cost of the copy or copies desired.

## SPECIAL RIGHTS OF THE PARTIES

F.O.P., LODGE 5                                                        13

(18)    The FOP has the right to initiate a system-wide grievance
        at Step Two without necessarily representing a single
        grievant. The County Government has the right to submit
        directly to the Step Three police grievance hearing officer
        those issues which may prevent or halt what is alleged to
        be a violation or breach of this Agreement by the FOP.  The
        President of the FOP shall first be informed of such action
        by the County.

## DISCIPLINARY ACTION

(19)  (a)    It is agreed and understood that the County has the
             right to the maintenance of discipline.    Any
             disciplinary action taken by the County shall be
             subject to appeal rights as provided in the grievance
             procedure herein.

      (b)    The forms of discipline shall include: dismissal,
             demotion, suspension without pay (including suspension
             of off-duty paid job assignments), transfer, written
             reprimand, and oral reprimand.  Suspension of off-duty
             paid job assignments will not be used as a separate
             form of discipline (i.e., separate from suspension
             without pay), unless the disciplinary action arises
             out of a police officer's performance of a paid job
             assignment.

      (c)    Any other form of discipline not specified in (b)
             above shall be approved by the FOP prior to its
             implementation.

      (d)    The County agrees that it will not require employees
             to work extra-duty hours, as a form of discipline,
             without the appropriate compensation.

## INTERNAL INVESTIGATION

(20)  (a)    Establishment

             This establishes the internal investigation procedures
             to be followed when a police officer is questioned in
             connection with an investigation of his/her conduct.

# EXHIBIT 3


American Arbitration Association
*Dispute Resolution Services Worldwide*

## LABOR ARBITRATION RULES
### Demand for Arbitration

| | |
|---|---|
| *MEDIATION: Please consult the AAA regarding mediation procedures. If you would like the AAA to contact the other parties and attempt to arrange a mediation, please check this box ☐* | |
| Name of Respondent ☐Employer or ☒Union<br>FOP LODGE #5 | Name of Representative (if known)<br>N/A |
| Contact Person<br>CPL. JOSEPH LAVELLE, PRESIDENT | Name of Firm (if applicable)<br>N/A |
| Address:<br>NCC Public Safety; 3605 N. DuPont Hwy | Representative's Address:<br>N/A |

| City | State | Zip Code | City | State | Zip Code |
|---|---|---|---|---|---|
| New Castle | DE | 19720 | N/A | | |

| | | | |
|---|---|---|---|
| Phone No.<br>302-395-8080 | Fax No. | Phone No.<br>N/A | No. |
| Email Address:<br>JPLavelle@nccde.org | | Email Address:<br>N/A | |

The named claimant, a party to an arbitration agreement dated JULY 13, 2006_____, which provides for arbitration under the Labor Arbitration Rules of the American Arbitration Association, hereby demands arbitration.

Nature of Grievance:
TERMINATION OF EMPLOYMENT (WORK RELATED DISABILITY)

Name of Grievant(s) (if applicable):
JILL CONNOR (GRIEVANCE NO. FOP/06-19)

Claim or Relief Sought:
NEW CASTLE COUNTY (EMPLOYER DEMAND - EMPLOYER REQUESTS DENIAL OF GRIEVANCE)

**REMINDER:** You can file your case online by visiting the AAA's website at www.adr.org. Please select "AAA Webfile" from the list of side menu options. You may also wish to visit the "Labor" "Focus Area" for a complete list of our administrative services and procedures, including our Expedited Procedures.

AMOUNT OF FILING FEE ENCLOSED WITH THIS DEMAND (please refer to the rules for the appropriate fee) $

THE FILING PARTY REQUESTS THAT HEARINGS BE HELD AT THE FOLLOWING LOCALE: NCC GOVERNMENT CTR. 87 READS WAY, 19720

You are hereby notified that copies of our arbitration agreement and this demand are being filed with the American Arbitration Association office located in PENNSYLVANIA _____, with a request that it commence administration of the arbitration. Under the rules, you may file an answering statement within ten days after notice from the AAA.

| Signature (may be signed by a representative) | Date:<br>5\|16\|07 | Name of Representative<br>ERIC LEONARD EPISCOPO |
|---|---|---|
| Name of the Claiming ☐Union or ☒ Employer<br>NEW CASTLE COUNTY GOVERNMENT | | Name of Firm (if applicable)<br>NEW CASTLE COUNTY LAW DEPARTMENT |
| Address (to be used in connection with this case):<br>87 READS WAY | | Representative's Address:<br>122 COUNTRY WOODS DRIVE |

| City | State | Zip Code | City | State | Zip Code |
|---|---|---|---|---|---|
| NEW CASTLE | DE | 19720 | NEW CASTLE | DE | 19720 |

| | | | |
|---|---|---|---|
| Phone No.<br>302 395-5130 | Fax No.<br>302 395-5150 | Phone No.<br>302 395-5130 | Fax No.<br>302 395-5150 |
| Email Address:<br>EEPISCOPO@NCCDE.ORG | | Email Address:<br>EEPISCOPO@NCCDE.ORG | |

To begin proceedings, please send two copies of this Demand and the Arbitration Agreement or relevant contract language, along with the filing fee as provided for in the Rules, to the AAA. Send the original Demand to the Respondent.

**AAA Customer Service can be reached at 800-778-7879**

# EXHIBIT 4

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

*Pennsylvania Labor Center*

July 9, 2007

230 South Broad Street, 12th Floor, Philadelphia, PA 19102-4106
telephone: 215-732-5260 facsimile: 215-732-5002
internet: http://www.adr.org/

Eric L. Episcopo, Esq.
New Castle County - Law Department
87 Reads Way
New Castle, DE 19720

Victor F. Battaglia, Sr., Esq.
Biggs and Battaglia
921 North Orange Street
P.O. Box 1489
Wilmington, DE 19899

Re: 14 390 00775 07 ALVA
    New Castle County
    and
    FOP Lodge 5

Grievances:   Gr. #FOP/06-19 Termination of Employment (Work Related Disability) - Jill Connor

Dear Parties:

This will acknowledge receipt of letters dated June 4, and July 6, 2007 from Mr. Battaglia and a letter dated July 2, 2007 from Mr. Espiscopo, copies of which we note were exchange between counsel.

The Association has carefully reviewed the contentions and positions of the parties as set forth in their correspondence. The Employer has met the filing requirements of the Labor Arbitration Rules by filing a demand for arbitration providing for administration by the American Arbitration Association. The issue raised by Mr. Battaglia is an issue that may be determined by an arbitrator.

Accordingly, in the absence of a court order staying this matter, the Association will proceed with its further administration. The parties should be prepared to present this issue to the arbitrator at the hearing.

By copy of this letter, we are forwarding the parties' correspondence to Arbitrator Parker for her information.

Very truly yours,

*Albert C. Van Horn, Jr.*

Albert C. Van Horn, Jr.
Case Manager
215 731 6121
vanhorna@adr.org

cc:   Joan Parker (w/encls.)
      CPL Joseph Lavelle

# AMERICAN ARBITRATION ASSOCIATION
## Notice of Hearing

July 10, 2007

Eric L. Episcopo, Esq.
New Castle County - Law Department
87 Reads Way
New Castle, DE 19720

Victor F. Battaglia, Sr., Esq.
Biggs and Battaglia
921 North Orange Street
P.O. Box 1489
Wilmington, DE 19899

Re: 14 390 00775 07    ALVA
New Castle County
and
FOP Lodge 5

Grievances:    Gr. #FOP/06-19 Termination of Employment (Work Related Disability) - Jill Connor

PLEASE TAKE NOTICE that a hearing in the above-entitled arbitration will be held as follows:

Place:   New Castle County
87 Reads Way
New Castle, DE 19720

Date:   November 13, 2007
Time:   10:00 AM
Before: Dr. Joan Parker

NOTE: The Arbitrator's cancellation requirement is per-diem cancellation/postponement fee if less than 15 full business days' notice prior to scheduled hearing date.

Please attend promptly with your witnesses and be prepared to present your proofs.

Albert C. Van Horn, Jr.
Case Manager
215 731 6121
vanhorna@adr.org

NOTICE: The arbitrator(s) have arranged their schedule and reserved the above date(s) based on the advice of the parties. Therefore, every effort should be made to appear on the date(s) scheduled. In the event that unforeseen circumstances make it impossible to attend the hearing as scheduled, a party requesting a postponement should obtain the agreement of the other party. If there is no mutual agreement, the arbitrator(s) will make a determination. All requests for postponements must be communicated to the Case Manager not the arbitrator). There should be no communication between the parties and the neutral arbitrator(s) other than at oral hearings. In some instances, postponements are subject to cancellation fees by the arbitrator(s). Any party wishing a stenographic record must make arrangements directly with the stenographer and notify the other parties in advance of the hearings.

cc:   Joan Parker
CPL Joseph Lavelle

# APPENDIX 1

Not Reported in A.2d, 1998 WL 157373 (Del.Ch.), 161 L.R.R.M. (BNA) 2561
(Cite as: 1998 WL 157373 (Del.Ch.))

Page 1

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Court of Chancery of Delaware.
BOARD OF EDUCATION OF SUSSEX COUNTY VOCATIONAL-TECHNICAL SCHOOL DISTRICT,
Plaintiff,
v.
SUSSEX TECH EDUCATION ASSOCIATION and Robert L. Swiger, Defendants.
No. 1900-S.

March 18, 1998.
David H. Williams and Paul P. Rooney, of Morris, James, Hitchens & Williams, Wilmington, Delaware, for plaintiff.

Kathi A. Karsnitz, of the Delaware State Education Association, Dover, Delaware, for defendant.

### MEMORANDUM OPINION

JACOBS, Vice Chancellor.

*1 The Board of Education of Sussex County Vocational Technical School District ("Plaintiff" or the "District"), brought this action to enjoin, preliminarily and permanently, an arbitration proceeding that presently is scheduled to begin on March 19, 1998. The arbitration was initiated by the Defendants, the Sussex VoTech Educational Association (the "Association") and Robert L. Swiger ("Swiger"), to contest the termination by the District of Swiger's employment as a teacher. The District has moved for a permanent injunction halting the arbitration, taking the position that Swiger's only remedy is an appeal to the Superior Court from the District's adverse decision. The Defendants have moved to strike paragraphs 6 and 10 of the verified complaint under Court of Chancery Rule 12(f), and to dismiss the complaint under Court of Chancery Rule 12(b)(6). This Opinion decides all three motions.

For the reasons that follow, the Court grants the Defendants' motion to strike certain portions of paragraphs 6 and 10, but denies the motion to dismiss. The Court also grants the Plaintiff's motion for an order enjoining the proposed arbitration.

### I. FACTS

The teachers of the Sussex County Vocational School District are governed by a collective bargaining agreement between the Association and the District (the "Collective Bargaining Agreement"). As a teacher employed by the District, Swiger was also subject to that Agreement. On May 13, 1997, the District received a report that Swiger had engaged in inappropriate behavior by allegedly touching female students and conducting activities of a sexual nature in the classroom. After investigating the charges, the District, in the middle of the school year, notified Swiger of its intent to terminate his employment under the Delaware Teacher Tenure Act, [FN1] for misconduct and/or immorality.

FN1. 14 Del.C. ch. 14, §§ 1-20.

Swiger requested a hearing, which the District granted. On June 18, 1997, the hearing was held before James D. Griffin, Esquire. On July 9, 1997, Mr. Griffin issued a report wherein he found and recommended that: (i) Swiger had been afforded the due process required by the United States Constitution, as he had received notice of his proposed termination and a hearing; (ii) the District is authorized by 14 Del.C. § 1411 to terminate a teacher's employment for misconduct and/or immorality; (iii) Swiger's conduct constituted misconduct and/or immorality; and (iv) Swiger should be terminated by reason of that conduct. On July 14, 1997, the District's Board voted to accept the hearing officer's recommendation and to terminate Mr. Swiger's employment.

Thereafter, Swiger elected to grieve his termination under Art. VIII.G of the Collective Bargaining Agreement. On July 28, 1997, the District denied Swiger's request to grieve. In response, on August 25, 1997, Swiger commenced an arbitration proceeding which is scheduled to begin on March 19, 1998. Swiger also appealed the District's decision to the Superior Court. That appeal has been stayed pending the outcome of this action and/or the arbitration.

*2 On October 14, 1997, the District filed this action, accompanied by a motion to enjoin the arbitration permanently. In response, the Defendants moved to strike paragraphs 6 and 10 of the complaint as scandalous, irrelevant, and unduly prejudicial; and to dismiss the complaint for failure to state a claim upon which relief can be granted.

### II. THE PARTIES' CONTENTIONS

In support of its motion for final injunctive relief, the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Plaintiff claims that it has met its burden of establishing all of the requirements for that relief. The Defendants vigorously argue the contrary.

In support of their motions to strike and to dismiss, the Defendants argue that certain portions of paragraphs 6 and 10 of the complaint should be stricken because they are irrelevant, scandalous, and unduly prejudicial. The Defendants argue also that the complaint should be dismissed as a matter of law because: (1) an arbitrator, not this Court, must decide whether Swiger's termination is arbitrable; (2) any interpretation of the Collective Bargaining Agreement must occur within the context of the grievance procedure; (3) the agreement to arbitrate found in the Collective Bargaining Agreement is not inconsistent with The Teacher Tenure Act, 14 *Del.C.*, ch. 14; and (4) the bar of *res judicata* does not apply because the challenged decision is by an administrative agency and is also on appeal.

The District argues that its complaint is legally sufficient, and should not be dismissed, for four reasons: (1) this Court is the appropriate tribunal to determine whether or not Swiger's termination is arbitrable; (2) the Collective Bargaining Agreement does not mandate that Swiger's termination be arbitrated; (3) even if the Collective Bargaining Agreement did so mandate, to that extent the Agreement must give way to the Delaware Teacher Tenure Act, which overrides conflicting provisions in collective bargaining agreements; and (4) arbitration of the legality of Swiger's termination is barred by the doctrine of *res judicata* and the public policy against inconsistent adjudications. [FN2]

> FN2. Because the Court concludes that it is the appropriate tribunal to determine the arbitrability of Swiger's termination and that the Collective Bargaining Agreement does not require arbitration, the Court does not reach the issue of whether the Board's decision to terminate Swiger is entitled to *res judicata* effect.

## III. ANALYSIS
### A. *Motion to Strike*

I first address the Defendants' motion to strike. Court of Chancery Rule 12(f) authorizes "the Court to order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." The Court may grant the motion if it determines that the matter sought to be stricken is irrelevant and unduly prejudicial. [FN3] I find that to be the case here.

> FN3. *Mills v. Gosling Creek*, Del.Super., C.A. No. 92C-12-006, Graves, J. (Oct. 6, 1993) at 3.

The merits of this action concern whether an arbitrator may decide Swiger's claim of improper termination, or whether Swiger's sole remedy is to appeal the District's decision to the Superior Court. Certain portions of paragraphs 6 and 10 allege in specific detail the conduct that formed the basis of Swiger's termination. Those specific allegations have no legal relevance to the purely procedural issue involved here, which is what tribunal--this Court or an arbitrator--should decide the question of arbitrability. Those "charging allegations" are also unduly prejudicial, because they attack Swiger's character, and their determination (by an administrative body) is contested and on appeal. Because they would be irrelevant to the procedural issue presented here and to the Court's analysis, it was unnecessary to include these charging allegations in the complaint. By including those allegations, the plaintiff has made public, charges that are contested and of a highly sensitive nature for no legally appropriate reason. In these circumstances, even though motions to strike are normally disfavored, the Court grants the motion to strike the irrelevant and prejudicial allegations in paragraphs 6 and 10 of the complaint.

### B. *Motion to Dismiss*
#### 1. Arbitrability

*3 In addressing the motion to dismiss, it is useful to keep in mind two important principles that are in conflict here. The first is that "the determination of whether a particular question is arbitrable is ultimately a question for the courts rather than for arbitrators." [FN4] The second is that there is a strong public policy favoring arbitration, [FN5] and that where the parties agree contractually that an arbitrator will decide a specified category of disputes, the courts will enforce the parties' expressed intent. [FN6]

> FN4. *United Engin. & Constr., Inc. v. IMO Indus., Inc.*, Del.Ch., C.A. No. 12611, Hartnett, V.C. (Feb. 16, 1993); *Falcon Steel Co. v. Weber Engin. Co.*, Del.Ch., 517 A.2d 281, 287 (1986).

> FN5. *James Julian, Inc. v. Raytheon Service Co.*, Del.Ch., 424 A.2d 665, 667 (1980).

> FN6. *University of Delaware v. Wyman Electrical Service Co.*, Del. Ch., C.A. No. 13567, Steele, V.C. (Aug. 11, 1994) at 2.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The Defendants argue that because the Collective Bargaining Agreement contains a broadly worded arbitration clause, the arbitrability issue must be decided by the arbitrator, not this Court. Specifically, Defendants claim that the provision in the Collective Bargaining Agreement that "[a]ny tenured employee terminated shall have the right to ... grieve their termination ..." [FN7] and that "[i]f the grievant is not satisfied with disposition of the grievance ... the grievant may appeal the matter to arbitration ...," [FN8] expresses the intent that the propriety of a teacher's termination shall be determined by an arbitrator.

FN7. Art. VIII.G.

FN8. Art. IX.G(1).

Plaintiff responds that (i) the mere presence of a "broad arbitration clause" in the Collective Bargaining Agreement does not necessarily constitute an agreement that the issue of arbitrability in a labor dispute must itself be arbitrated, and (ii) in any event, the Collective Bargaining Agreement does not contain a "broad arbitration clause," and no other provision in the Collective Bargaining Agreement relegates the issue of arbitrability to an arbitrator.

The Defendants cite *United Engineers & Constructors v. IMO Industries* [FN9] as support for their argument that where a contract contains a broad arbitration clause, the Court's role is limited to determining if the party seeking to enforce a right to arbitrate a dispute "is making a claim which on its face is covered by the contract." Ironically, the District also relies upon *United Engineers* as support for its position that a court, not an arbitrator, must determine arbitrability. The District argues that *United Engineers* holds that while in other contexts the presence of a broad arbitration clause in an agreement creates a presumption that a dispute over arbitrability must itself be arbitrated, that presumption does not apply in labor disputes.

FN9. Del.Ch., C.A. No. 12611, Hartnett, V.C. (Feb. 16, 1993) at 6.

It is unnecessary to decide the question of whether the "presumption" of arbitrability applies in the labor relations context, because in any event, the Defendants have not identified, nor has the Court located, any such "broad" arbitration clause in the Collective Bargaining Agreement. [FN10] I find this Court to be the appropriate forum to decide the arbitrability issue

because, as more fully discussed below, (1) the Teacher Tenure Act prevails over any alleged contract right to arbitrate a termination provided for in the Collective Bargaining Agreement, and (2) Article VIII of the Collective Bargaining Agreement permits the arbitration only of teacher terminations that occur at the end of the school year, but not of terminations that occur during the school year.

FN10. Article IX(B)(1) of the Collective Bargaining Agreement defines a grievance as "a claim based upon the interpretation, application, or violation of this Agreement or administrative ⌐ ⌐ ⌐ s directly affecting working conditions."

## 2. The Teacher Tenure Act [FN11]

FN11. 14 Del.C. ch. 14, §§ 1-20.

*4 The District claims that the Teacher Tenure Act overrides and effectively nullifies any Collective Bargaining Agreement provision requiring arbitration in these circumstances. Section 1410 of that Act governs end-of-the-school-year terminations; § 1420 applies to terminations that occur during the school year. Under the Teacher Tenure Act, the District's Board decides whether a teacher should be terminated. That statute also provides that "a decision of the board shall be final and conclusive unless, within 10 days after a copy thereof has been received by the teacher, the teacher appeals to the Superior Court for the County in which the teacher was employed." [FN12] To the extent that any Collective Bargaining Agreement arbitration provision is inconsistent with this express command of the Teacher Tenure Act, that contract provision would be invalid.

FN12. 14 Del.C. § 1419.

The Defendants respond that the Collective Bargaining Agreement is consistent, and not does conflict, with the Teacher Tenure Act, because the termination procedure prescribed by the Act is not mandatory or exclusive. Therefore, Defendants argue, *Swiger* is free to invoke the contractual grievance procedure under the Collective Bargaining Agreement. [FN13]

FN13. Although there is no Delaware case on point, courts in other jurisdictions have held that similar provisions in employee tenure statutes operate to invalidate collective bargaining agreement provisions mandating arbitration of employee terminations. *Local*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*8599, United Steel Workers of Am., AFLCIO v. Board of Educ. of Fontana Unif. Sch. Dist., Cal.App., 162 Cal.App.3d 823, 209 Cal.Rptr. 16, 17-18 (1984); Mindemann v. Independent Sch. Dist. No. 6 of Caddo County, Okl.Supr., 771 P.2d 996, 1000 (1989); Neshaminy Fed. of Teachers v. Neshaminy Sch. Dist., Pa.Supr., 501 Pa. 534, 462 A.2d 629 (1983).*

I cannot agree. The termination procedure set forth in the Delaware Teacher Tenure Act is exclusive and must prevail over any inconsistent arbitration provision in the Collective Bargaining Agreement. The termination procedures outlined in the Teacher Tenure Act are made applicable generally and without qualification. The Act does not provide that its termination procedures can be altered by, or be made subject to, collective bargaining agreements. Furthermore, the Public School Employer Relations Act [FN14] states that "no collective bargaining agreement shall be valid or enforceable if its implementation would be inconsistent with any statutory limitation on the public school Employer's funds, spending or budget, *or would otherwise be contrary to law.*" [FN15] In this context, "law" must necessarily include the Teacher Tenure Act.

FN14. 14 *Del.C.* ch. 40.

FN15. 14 *Del.C.* § 4013(f) (emphasis added).

The Defendants argue that for the Teacher Tenure Act termination procedures to be exclusive, that Act must explicitly so provide. This argument finds no support in the statute or other authorities cited by Defendants. Therefore, even if the Collective Bargaining Agreement could be read to permit the arbitration of Swiger's termination, the Delaware Teacher Tenure Act forecloses that remedy in this particular case.

**3. The Collective Bargaining Agreement**

The Defendants also contend that in all events, the Collective Bargaining Agreement does not mandate arbitration of Swiger's termination, because that Agreement authorizes arbitration only with respect to teacher terminations that occur at the end of the school year. The Defendants argue that because Swiger was terminated during the school year, Swiger has no contract right to arbitrate the propriety of his termination, and his sole remedy is an appeal to the Superior Court. I agree.

*5 Article VIII.A of the Collective Bargaining

Agreement provides that "[i]n all cases of termination at the end of the school year, the employee shall be given written notice of an intention to terminate by certified mail postmarked no later than May 1." It is undisputed that Swiger received written notice of the District's intention to terminate him on May 13, 1997. Thus, Swiger was not terminated "at the end of the school year," and by process of elimination, he could only have been terminated "during the school year." Article VIII.A of the Collective Bargaining Agreement provides that "[i]n all cases of termination during the school year, the rights of the teachers shall be as prescribed in Delaware Code Title 14, Chapter 14," *i.e.,* the Teacher Tenure Act. As earlier noted, under that Act, teachers who are terminated during the school year are not entitled to elect between a grievance and a hearing before the Board.

Article VIII.G of the Collective Bargaining Agreement affords a tenured employee subject to termination the right to elect a hearing before the Board, or to grieve the termination through arbitration. Article VIII, on its face, applies only to teachers who were terminated at the end of during the school year. Because Swiger was terminated during the school year, Article VIII does not apply, and he is not entitled to grieve his termination. Swiger's sole remedy is to appeal the decision of the District to the Superior Court. The Defendants' motion to dismiss must, therefore, be denied.

**C. *Motion for Injunctive Relief***

Finally, the District seeks a permanent injunction against the pending arbitration of the propriety of Swiger's termination. To obtain the relief sought, the District must show that it will succeed on the merits, that there is an immediate threat of imminent irreparable harm in the absence of an injunction, and that the balance of hardships weighs in its favor. [FN16]

FN16. *Draper Communications, Inc. v. Delaware Valley Broadcasters LP*, Del.Ch., 505 A.2d 1283, 1288 (1985).

Because the Court has determined that Swiger's termination is not arbitrable, the District has established that it will succeed on the merits of its claim. The District has also shown that it would suffer irreparable harm if the injunction is denied, because it would be required to devote unnecessary time and resources to contest the arbitrability of the District's decision to terminate Swiger, [FN17] and because no remedy other than injunctive relief would be adequate

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

to restore to the District its right to defend the propriety of its actions in the appellate forum mandated by the Legislature.

> FN17. *Delaware Public Employees v. New Castle County,* Del.Ch., C . A. No. 13314, Chandler, V.C. (Aug. 25, 1994).

Finally, there are no equities that outweigh those favoring the grant of an injunction. Swiger has not shown how he would be prejudiced by an injunction halting the arbitration, as he himself initiated an appeal to the Superior Court.

### III. CONCLUSION

For the foregoing reasons, the Court grants the Defendants' motion to strike, denies the Defendants' motion to dismiss the complaint, and grants the Plaintiffs' motion to enjoin the arbitration presently scheduled for March 19, 1998. The parties shall confer and submit an implementing order.

Not Reported in A.2d, 1998 WL 157373 (Del.Ch.), 161 L.R.R.M. (BNA) 2561

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 1994 WL 515291 (Del.Ch.)
(Cite as: 1994 WL 515291 (Del.Ch.))

Page 6

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Court of Chancery of Delaware.
**DEL. PUBLIC EMPLOYEES, et al.**
v.
**NEW CASTLE CO.**
Civ. A. No. 13314.

Aug. 25, 1994.

Perry F. Goldlust, Heiman, Aber & Goldlust, Wilmington.

David H. Williams, Morris, James, Hitchens & Williams, Wilmington.

CHANDLER, Vice-Chancellor.

*1 As you know, this lawsuit began on January 3, 1994, when the plaintiffs Delaware Public Employees, Council 81, American Federation of State, County, and Municipal Employees, AFL-CIP and Local 1607 ("plaintiffs" or "the union") filed a complaint seeking to enjoin defendant New Castle County ("defendant" or "County") from implementing a shift schedule change affecting 911 Center employees. I denied the union's motion for a preliminary injunction in a bench ruling on January 12, 1994. The County proceeded with implementation of the proposed shift change.

Prior to the above proceedings, the union had filed a grievance charging that any change in the 911 work schedule was a violation of the collective bargaining agreement. The County denied the grievance, contending that the dispute did not involve the application or interpretation of the collective bargaining agreement and, thus, was not grievable or arbitrable. After this Court denied the union's request for a preliminary injunction, the union proceeded with its grievance by filing a demand for arbitration with the American Arbitration Association. The County maintains that the matter is not arbitrable and has opposed the appointment of an arbitrator. Nevertheless, an arbitrator was appointed and a hearing date on the dispute set for tomorrow, August 26, 1994. This prompted the County's pending application to enjoin the union from proceeding with the scheduled arbitration. For the reasons that follow, I agree that the union should be enjoined from proceeding with the arbitration.

The facts, except where noted, are undisputed. For many years before the County changed the 911 work schedule, persons employed in the 911 Center had been assigned to work on what is known as a 2-2-4 work schedule. Like other terms and conditions of employment, the 911 work schedule and the compensation paid to 911 employees had been mandatory subjects of bargaining. See 19 Del.C. § 1301(3). Indeed, the terms and conditions of employment applicable to the 911 Center employees had been incorporated into previous collective bargaining agreements and are contained in the current collective bargaining agreement. See Compl. Ex. 1, pp. 44-46.

The parties entered into collective bargaining for a successor labor agreement to be effective February 10, 1992, and the subject of the 2-2-4 schedule was one over which the parties negotiated. A Tentative Agreement which amended the collective bargaining agreement and extended it from February 10, 1992, to March 31, 1994, was submitted on February 4, 1992. See Compl., Ex. 2. Paragraph 9 of the Tentative Agreement provided for the creation of a Labor Management Committee ("the Committee") which was to meet within 30 days of the agreement's ratification to review alternatives to the 2-2-4 schedule for the 911 employees. Any agreement reached by the Committee regarding the 2-2-4 schedule was subject to the ratification procedure contained in the collective bargaining agreement. The Committee was instructed to attempt to reach an agreement within 90 days of its initial meeting. If it was not able to reach an agreement within that 90 day period, the Committee was to cease to exist. No provision was made to reopen the agreement. On February 10, 1992, the Tentative Agreement was ratified by the union and signed by representatives of both parties. See Compl. Ex. 3.

*2 On April 28, 1992, the County designated its representatives to the Committee. Compl. Ex. 7. On May 14, 1992, the County wrote a letter to the union seeking to schedule a meeting to discuss the 911 work schedule and inquiring about the union's designation of members. Compl. Ex. 8. On August 12, 1992, the union's representative responded that because the 30 day time limit to establish the Committee had expired, the union did not believe it had an obligation to negotiate with the County on the subject of the 2-2-4 schedule. Compl. Ex. 9. The County initially responded by stating that if the union would not go

Not Reported in A.2d
(Cite as: 1994 WL 515291, *3 (Del.Ch.))

is a dispute involving hours and working conditions. Nevertheless, it does not arise out of the application or interpretation of the collective bargaining agreement. Instead, it arises under a separate collateral agreement between the union and the County, that is, paragraph 9 of the Tentative Agreement. The terms of paragraph 9, as I made clear in my bench ruling on January 12, were intended to set forth a separate process for conducting negotiations over alternatives to the 2-2-4 schedule. The record evidence convinces me that paragraph 9 is a collateral agreement or understanding; it is not part of the collective bargaining agreement. Paragraph 9 provides that any substantive change in the work schedule agreed to between the parties is subject to ratification by the union before such a change can become part of the collective bargaining agreement. Nothing in paragraph 9 refers to grievances or disputes being subject to arbitration. Rather, the purpose of paragraph 9 appears to have been to take the agreement to negotiate the 2-2-4 schedule outside the collective bargaining contract so as not to interfere with the negotiations that were occurring with reference to it.

*4 In my opinion, the issue in this case is similar to that in *Cornell University v. UAW Local 2300,* 942 F.2d 138 (2d Cir.1991). There, the Second Circuit Court of Appeals held that a dispute arising out of a letter agreement that was collateral to the collective bargaining agreement was not covered by the contract's arbitration clause. As here, the collective bargaining agreement in *Cornell* provided that any matter involving the interpretation or application of the collective bargaining agreement was an arbitrable dispute. In negotiations leading up to the collective bargaining agreement, the parties in *Cornell* exchanged different proposals regarding health care that were ultimately incorporated into a letter of understanding. The letter provided that the union and the university would establish a health insurance committee for the purpose of cost containment and for review of health insurance plan information. When the university later announced changes to its health care plan, the union filed a grievance seeking to force the university to abide by the terms of the letter of understanding. The Second Circuit held that the union's grievance arose under the terms of the letter of understanding which did not contain an arbitration provision. Finding that the letter agreement created an entirely distinct and different obligation from the collective bargaining agreement, the Second Circuit concluded that the university was not obligated to arbitrate the dispute.

I think the circumstances here mirror those in *Cornell.* The union's claim in this case arises under the terms of

the collateral agreement set forth in paragraph 9. The obligations imposed by that collateral agreement are distinct from the collective bargaining agreement and the provisions in paragraph 9 indicate that the parties intended the collateral agreement to be independent of the collective bargaining agreement. For example, the collateral agreement in paragraph 9 states that any agreement reached on the shift issue is subject to the ratification provision of the collective bargaining agreement. The collateral agreement would not need to refer to the ratification provisions of the collective bargaining agreement if, as the union argues, the collateral agreement incorporated all of the provisions of the collective bargaining agreement. Having considered the circumstances, I conclude that the County has demonstrated more than a reasonable probability of success on the merits of their claim that disputes arising under the collateral agreement set forth in paragraph 9 are not arbitrable.

With respect to the threat of irreparable harm, the County insists that arbitrating this issue will waste time and resources. Should the union prevail at the arbitration, the County would then be required to invest more time and resources seeking judicial relief from a decision that allegedly never should have been made in the first place. Moreover, if the County were forced to submit to arbitration and risk an adverse decision, it would be forced to implement a second schedule change, together with the dislocations caused by such a change. Should the County later prevail in this action, yet another change in schedule would be required. These factors, although perhaps not a serious threat of irreparable harm, weigh in favor of the relief requested, especially in light of the strong showing of a likelihood of success on the merits. Thus, I find it unnecessary to calibrate exactly the severity of the harm to the County. *See Allen v. Prime Computer, Inc.,* Del.Supr., 540 A.2d 417 (1988).

*5 Finally, the union will not suffer undue prejudice if it is enjoined from proceeding with the scheduled arbitration. The work schedule change for 911 employees which is the subject of this controversy was implemented by the County more than six months ago. An injunction against the union until this case is resolved will not force a disruption in the existing schedule. The union may pursue its claim in this action or pursue an unfair labor practice charge against the County with respect to the work schedule change.

For the foregoing reasons, I grant the County's motion to enjoin the union from proceeding with the arbitration scheduled for August 26, 1994. An Order

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

is attached.

### ORDER FOR PRELIMINARY INJUNCTION

For the reasons set forth in this Court's Letter Opinion entered in this case on this date, it

ORDERED:

1. Plaintiffs, Delaware Public Employees, Council 81, American Federation of State, County, and Municipal Employees, AFL-CIO, and Local 1607, are preliminarily enjoined from arbitrating Grievance 93-83/Change of Work Schedule for Employees in the 911 Center until such time as this matter is finally adjudicated in this Court.

2. A copy of this Order shall be served upon the plaintiffs in accordance with the Rules of this Court, such service to be made by the Sheriff, a deputy or by any person or persons eighteen (18) or more years of age designated by counsel for defendant New Castle County.

3. A final hearing shall be held on Tuesday, November 1, 1994, commencing at 10:00 a.m. in the Chancery Courtroom in Wilmington, Delaware.

Not Reported in A.2d, 1994 WL 515291 (Del.Ch.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.