IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JILL CONNOR, | § § | |
| Plaintiff, | § § | C.A. Number: 07-366 GMS |
| v. | § § § § | |
| NEW CASTLE COUNTY, GUY H. SAPP, individually and in his official capacity, and CHARLOTTE L. CROWELL, individually and in her official capacity, | § § § § § § | **Trial by Jury Demanded** |
| Defendants. | § | |

**ANSWERING MEMORANDUM OF PLAINTIFF JILL CONNOR
IN OPPOSITION TO DEFENDANT, NEW CASTLE COUNTY'S
MOTION TO STAY**

Plaintiff Jill Connor, by and through her attorney, opposes Defendants' Motion to Stay this case pending determination of the union grievance proceeding in *Fraternal Order of Police, New Castle County Lodge No. 5 v. New Castle County*, Griev. No. FOP/06 – 19 (hereafter "Union Grievance"). As set forth below, the grounds for Plaintiff's opposition are that, contrary to the Defendants' assertion, neither the issues nor the parties in this action are the same as in the Union Grievance and therefore a stay is unwarranted.

Jill Connor sustained an injury in the course of her duties as a police officer employed by New Castle County (Complaint, para. 9). When she requested reasonable accommodation to allow her to return to work, even though such accommodations were available, the County refused to accommodate her. (Complaint, para. 12)

Because the County disputed that the injury was work-related she had to seek relief under the Worker's Compensation laws of Delaware (Complaint, para. 13). When she was successful, the County retaliated by discharging her as an employee. (Complaint, para. 15)

Officer Connor complained to her union (FOP Lodge 5) which successfully filed a Grievance contesting only the County's violation of the County Ordinance which protected police officers in the line of duty. New Castle County Ordinance 26-03-904B (Exhibit 1 to Defendant's Motion to Stay (pages 8 and 9 of 32).

That Union Grievance resulted in the decision by an independent hearing officer upholding the Grievance, holding that: "The County's own policies do not authorize termination in this situation." (Union Grievance decision, Ex. A to this Answer) The County has appealed that decision to Step Four (binding arbitration)

The Grievance remedy is limited to reinstatement and payment for lost wages and benefits. It does not implicate any of Plaintiff's claims for damages. It does not implicate consideration of the Americans with Disabilities Act. It does not implicate resolution of violation of State and Federal law dealing with retaliation. It does not resolve Plaintiff's statutory claim for worker's compensation retaliation. The Union Grievance procedure is limited to "unresolved questions or disputes regarding the wages, hours, terms or conditions of employment, including unresolved questions or disputes concerning the interpretation of this Agreement." Agreement between New Castle County and the Fraternal Order of Police Lodge No. 5, page 5 (Exhibit B). The Union Grievance procedure has no jurisdiction to determine compensatory or punitive damages or statutory attorney's fees resulting from the willful misconduct of the Defendant, or even compensation for medical bills or other out of pocket damages.

The Union Grievance procedure does not include consideration of any of the claims asserted under Federal and State laws, the ADA, the Delaware Handicapped Persons Law, claims of denial of due process, wrongful termination and violation of 19 Del. C. § 2365 and 19 Del. C. § 720.

Resolution of the grievance will not affect claims pending in this action. For example, if the grievance is upheld at this, the fourth stage, it will impact Plaintiff's claim for lost wages to date but will not affect Plaintiff's claims for damages or attorney's fees. If the grievance is decided against the employee, it will have no impact upon these claims but will simply decide that the County complied with the literal terms of the collective bargaining agreement.

None of these claims asserted by Plaintiff would be resolved by the Union Grievance.

Defendant confuses the fact that successful defeat of the County's appeal of the grievance award against it will require only that the Plaintiff be reinstated, with the fact that in this litigation she will be compensated for Defendants' serious acts of misconduct.

If the fourth step of the grievance is decided adverse to the employee it will only mean that Plaintiff has not asserted a successful claim within the limited purview of the collective bargaining agreement. In either case, resolution of the grievance will not terminate this litigation.

Cases such as *Local Lodge No. 595 v. Howl Sound Company*, 350 F.2d. 508 (1965) deal solely with wage and hour questions regulated by the collective bargaining agreement and are not relevant to this discussion.

*Farm Family Mutual Insurance Company v. Blevins*, 572 F.Supp. 397 is a good decision by former District Court Judge Latchum dealing with whether stacking insurance coverage is an arbitration question. It is not relevant to these issues.

Defendants' citation of and reliance upon *James Julian v. Raytheon Service Co.*, Del. Ch., 424 A.2d. 665 (1980) is closer to the issues involved herein but not on point. It is closer because it clearly makes the point that: "…claims arising under Federal (Antitrust) laws are of a character which are not appropriate for enforcement by arbitrators…" (p. 667). As is the case with Federal law, the Vice Chancellor said:

> "…only the Federal Courts have jurisdiction to make factual determinations on issues involved in an alleged breach of the Federal Antitrust situation…"

In short, the issues involved in Federal and State claims asserted are not subject to determination by the arbitrator. They are not the same claims asserted in the grievance procedure.

*Balfour v. Gutstein*, 547 F.Supp. 147 (ED.Pa. 1982), relied upon by County is dispositive of County's Motion to Stay. There, the court denied the defendant's motion to stay, stating:

> "We have already noted that the two actions are not co-extensive. Hence, even if we stayed this action and awaited judgment in the State Court case, the parties would nevertheless be required to return to this forum and litigate those matters not previously decided…"

*Nigro v. Blumberg*, 373 F.Supp. 1206 (E.D.Pa. 1974) is to the same effect. Although there, the motion to stay was granted, it was granted for precisely the same reason it is required that this Court not grant the stay here. The court stated:

> "Comprehensive disposition of the rights of all of the parties is possible only in the state forum and not here."

4

The County admits that it is essential to its Motion that the issues "in the matter sub judice are the same issues...". It is obvious that the arbitrator cannot and will not address the issues of the Federal and State claims not subject to the grievance procedure.

Not only would the Union Grievance proceeding not decide the issues presented here, but also the parties to the proceeding are not the same as in this litigation. The Union Grievance is between the FOP and the County. This litigation has Connor as Plaintiff and Guy Sapp, Charlotte Crowell and the County as Defendants. In Plaintiff's civil rights action, under 42 U.S.C. § 1983, Crowell and Sapp are essential Defendants. In the 1983 action the County will be liable only if Plaintiff can prove that her rights were violated pursuant to a County policy or custom. It is at best disingenuous for Defendants to assert the parties are the same when they will surely deny County policies could lead to liability under § 1983.

WHEREFORE, the Plaintiff prays that this Motion be denied and that the cost incidence hereto be assessed against the Defendant, including a reasonable allowance for counsel fees.

BIGGS AND BATTAGLIA
/s/ Victor F. Battaglia
Victor F. Battaglia, Sr.(ID# 156)
921 Orange Street
Wilmington, DE 19801
(302) 655-9677
VictorSr@batlaw.com
Attorney for Plaintiff

Date: August 13, 2007

# EXHIBIT A

# GRIEVANCE PROCEDURE
## Step Three Decision

| | |
|---|---|
| Fraternal Order of Police,<br>New Castle County Lodge No. 5 )<br>)<br>)<br>)                                    Grievance No. FOP/06-19<br>vs.                                            )<br>)<br>)<br>Government of New Castle County  ) | |

For the County:     Eric L. Episcopo, Esq.
                    First Assistant County Attorney

For the Union:      Victor Battaglia, Esq.

Hearing Officer:    Lisa Priore McQuarrie, Esq.

Date of Hearing:    May 2, 2007

## BACKGROUND

1. **Statement of the Case**

The Government of New Castle County (the "County") employed Jill Conner as a police officer. Off. Connor's employment was covered by a collective bargaining agreement between the Fraternal Order of Police, New Castle County Lodge No. 5 (the "Union") and the County, dated April 1, 2005 (the "Agreement").

Guy H. Sapp, Director of Public Safety, recommended that Off. Conner be terminated from employment with the County on May 30, 2006 because of her "inability to satisfactorily perform the work that [her] position requires." The County held a Pre-termination Hearing on July 14, 2006 and on August 7, 2006 found no mitigating circumstances to rescind the recommendation for Off. Connor's termination. The County terminated Off. Connor as of August 7, 2006. The Union filed a Grievance on behalf of Off. Connor on September 7, 2006, alleging that the County violated the Agreement by terminating her employment.

The parties waived the Step Two Hearing. A Step Three Hearing was held on May 2, 2007. Counsel represented both the County and the Union. Both parties were given a full and fair opportunity to present evidence and arguments in support of their respective contentions.

2. **Statement of the Facts**

Off. Connor began working for the County as a police officer on or about January of 2002. In September of 2004, Off. Connor took a wild dog into custody in the course of duty, which lead to her contracting Lyme's disease and two other related diseases. As

a result, Off. Connor became temporarily disabled, making her unable to perform her police officer duties.

A County physician, Vaneeta Kubal M.D., examined Off. Connor for her annual fitness for duty evaluation on January 18, 2006 at the Omega Medical Center per Paragraph 83(c) of the Agreement. At that time, Dr. Kubal reported that "Ms. Connor is unable to fulfill the requirements of the position as a police officer for New Castle County. I am in agreement with the physical limitations imposed by her treating physician, Dr. Streit. She may be able to return to some form of indoor employment, with limited hours but not as a police officer."

On January 23, 2006, Off. Connor was seen by Dr. Streit, who indicated on the County Worker's Compensation Physical Restrictions document that Off. Connor could return to part-time work at five hours per day of light duty. He also indicated that it was "undetermined" when Off. Connor could return to full duty and that no "permanent restrictions" existed "at this time." In the attached cover letter, Dr. Streit stated that "Ms. Connor is not yet able to meet the physical requirements of full police work but can tolerate light duty with limited hours." The County was unable to offer Off. Connor a position that satisfied these limitations.

During the course of this temporary disability, Off. Connor applied for and received worker's compensation because the Industrial Accident Board concluded that Off. Connor's disability resulted from an injury sustained directly in the performance of her work. The County paid Off. Connor the difference between Off. Connor's salary and the amount of her worker's compensation payments. The County stopped paying Off. Connor's supplemental income on August 7, 2006, the effective date of her termination.

3

On August 17, 2006, Dr. Streit reported to the County that Off. Connor "is currently unable to work full time but can tolerate light duty due to her tick-borne diseases. Since her physical progress has been positive and consistent, I feel that Ms. Connor can now handle up to 8 hours per day light duty. Ms. Connor is in agreement with this assessment as her symptoms are slowly but steadily improving." On the County Physical Restrictions document, Dr. Streit again indicated it was "undetermined" when Off. Connor could return to full duty and that no "permanent restrictions" existed "at this time." The County already had terminated Off. Connor, and therefore, did not offer her any position that satisfied these limitations.

## ISSUE

Did the County violate the Agreement by terminating Off. Connor's employment? If so, what is the Union's remedy?

## PERTINENT AGREEMENT PROVISIONS

## GRIEVANCE SUBMISSION

. . .

(16)   Step Three: Police Grievance Hearing Officer

. . .

    (b)    The police grievance hearing officer shall consist of one individual...The individual shall hear grievances and shall render decisions based upon the terms and conditions of the Agreement. Said individual may not make any decision contrary to, inconsistent with, or modifying or varying the terms of this Agreement.

4

## LEAVE OF ABSENCE

(58) Leaves of absence may be granted to full-time employees covered by this Agreement as follows:

    (f) Disability Leave – A permanent, probationary or limited – term employee who is temporarily disabled in the line of duty shall receive full pay for the period of his/her disability without charge against his/her vacation or sick leave, subject to the following conditions:

        (1) Provided that the disability results from an injury or illness sustained directly in the performance of the employee's duties, as provided in the State Worker's Compensation Act.

        (2) If incapacitated for his/her regular employment, the employee may be given other duties within the Police Department for the period of recuperation. Unwillingness to accept such an assignment as directed by the Chief of Police or the Chief Human Resources Officer or designees will make the employee ineligible for disability leave during the time involved.

        (3) A physician selected by the County shall determine the physical ability of the employee to continue working or to return to work unless the employee's physician determined otherwise, in which case a third impartial physician shall be employed to make the decision.

## MERIT SYSTEM RULES

(80) In the administration of the matters covered by this Agreement, the County Government and the FOP and its members are governed by the applicable rules and regulations of the New Castle County Merit System Ordinance, adopted pursuant to and in accordance with Delaware 9C, Section 1451, and policies of the County which do not conflict with the terms of this agreement.

## UNION'S POSITION

The Union contends that the County violated the Agreement by terminating Off. Connor's employment. The Union argues that the County has violated a County pattern and practice of offering light duty positions to officers injured in the line of duty as a reasonable accommodation for their disabilities. Moreover, the Union argues that Off. Connor's termination discriminates against her disability and served as retaliation for her

worker's compensation claim. Finally, the Union contends that the County mislead it at the Pre-termination Hearing, where it agreed to offer Off. Connor a light duty position if she could demonstrate the ability to work 40 hours a week. As its remedy, the Union seeks that Off. Connor be given a position that allows her to work while continuing to recuperate.

## COUNTY'S POSITION

The County contends that it did not violate the Agreement. Specifically, the County argues that it has waited almost two years to see if Off. Connor could return to her position, and that the Agreement did not obligate the County to offer Off. Connor a limited duty position while it waited longer for her return. The County further contends that any discussion surrounding discrimination and retaliation are irrelevant because those claims were not made part of the grievance. Finally, the County denies that it made any promises at the Pre-termination Hearing regarding offering Off. Connor a light duty position.

## DISCUSSION

The Union contends that the County has violated the Agreement by terminating Off. Connor's employment. In my opinion, the evidence supports that the County violated the Agreement. Therefore, the County has not satisfied its burden of proof in this case.

Paragraph 80 of the Agreement incorporates the County Merit System Ordinance into the Agreement. While both the parties and I agree that section 26.03.904 of the Merit System regarding disabilities in the course of employment is the applicable law in

this case,[1] I disagree with how the parties are applying it in this situation. In my opinion, the parties never addressed the real issue in this case, which is that regardless of whether the County should or should not have offered Off. Connor a light duty position during her recuperation, section 26.03.904 did not authorize the County to terminate Off. Connor.

Under section 26.03.904, as "a permanent…employee who is temporarily disabled in the line of duty," Off. Connor is entitled to receive full pay for the "period of [her] disability." Subparagraph D makes it clear that if the disabled employee is receiving worker's compensation, the County must supplement those payments to make the employee whole. Up until August 7, 2006, the County provided Off. Connor with full pay by supplementing her worker's compensation payments in order to comply with that section of the Merit System.

On or about, May 30, 2006, however, the County concluded that not only was it no longer obligated to pay Off. Connor the supplemental payments, but that it was no longer obligated to employ Off. Connor because of her "inability to satisfactorily perform the work that [her] position requires." The record does not demonstrate why the County reached that conclusion. For example, the record does not demonstrate that a subsequent determination had been made that Off. Connor's disability did not result from an illness sustained directly in the performance of her work. The record also does not demonstrate that Off. Connor was unwilling to accept "other duties with the County government for the period of recuperation."

---

[1] Paragraph 58(f) of the Agreement's language generally mirrors section 26.03.904, except it does not address the County's requirement to supplement worker's compensation payments and it adds a requirement in subsection (3) to have an impartial physician determine the physical ability of an employee to return to work if the County's and employee's physicians disagree.

7

Therefore, the only plausible explanation is that the County has determined that it no longer needs to employ Off. Connor because her disability is no longer "temporary." This conclusion of the County fails for two reasons. First, section 26.03.904C requires that a County physician must determine the physical ability of the employee to return to work. No County physician has indicated that Off. Connor can never return to work as a police officer. In Dr. Kubal's January 2006 letter, I understood her merely to be agreeing with Dr. Streit that Off. Connor could not return to work as a police officer <u>at that time</u>. Dr. Streit has been quite clear in his reports that Off. Connor is constantly improving and that he does not believe her disability is permanent. If ultimately Dr. Kubal and Dr. Streit were to disagree on this point, section (58)(f) of the Agreement requires an impartial physician to make the ultimate conclusion regarding whether Off. Connor's disability is permanent. To my knowledge, Off. Connor's medical condition has never been evaluated by an impartial physician.

Second, even if an impartial physician were to determine that Off. Connor's disability was permanent, rather than temporary, the County still would not be able to terminate Off. Connor's employment. Section 26.03.904 does not address termination in any manner. In contrast, section 26.03.905, regarding non-work-related disabilities specifically authorizes termination in certain circumstances. Therefore, when the County Council wanted to allow the County to terminate disabled employees, it stated so, making the absence of that allowance in 26.03.904 significant.

Moreover, the County's own policies do not authorize termination in this situation. Police Directive 22 regarding job related illnesses, makes it clear that when a "medical determination has been made that a permanent injury will prevent the employee

from ever performing the full duties of his/her job description, appropriate steps will be taken under the Worker's Compensation Law of Delaware and the New Castle County Pension Law for the purpose of pensioning the injured employee." Therefore, at the very least, Off. Connor would be entitled to receive some type of disability related pension, rather than simply be terminated without any continuing relationship with the County.

I agree with the County that it has no obligation under the Merit System to place Off. Connor in an alternative position during her recuperation from her temporary disability. Given my ruling, it is unnecessary for me to address the other arguments of the parties.

### AWARD AND ORDER

For the foregoing reasons, Grievance No. FOP/06-19 is granted. The County shall reinstate Off. Connor as of August 7, 2006 and make her whole through the back pay of supplemental payments and any other type of compensation and/or benefits that she was receiving as a temporarily disabled employee receiving worker's compensation.

Lisa Priore McQuarrie, Esq.
Hearing Officer

Date: May 12, 2007

9

**LISA PRIORE MCQUARRIE**
208 Kirk Avenue
Wilmington, DE 19803
(302) 765-3399

May 12, 2007

Cpl. Joseph Lavelle
President, FOP Lodge No. 5
3601 North DuPont Highway
New Castle, DE 19720

LaTonya B. Ashley
Employee Relations Specialist
Human Resource Department
New Castle County
New Castle County Government Center
87 Reads Way
New Castle, DE 19720

    Re:    Grievance No. FOP/06-19

Dear Cpl. Lavelle and Ms. Ashley:

    I have enclosed my Step Three Decision for the above referenced Grievance.

                                              Very truly yours,

                                              Lisa Priore McQuarrie, Esq.
                                              Hearing Officer

cc: Victor Battaglia, Esq. (w/enclosure)

# EXHIBIT B

(6) (a) The employees in the bargaining unit shall be represented for the purpose of grievance adjustment by a Grievance Committee of not more than four (4) employee members which shall consist of the President of the FOP, Chairperson of the Grievance Committee, and two (2) grievance representatives. The County agrees to recognize grievance representatives in accordance with the following:

Squad A - One Grievance Representative
Squad B - One Grievance Representative
Squad C - One Grievance Representative
Squad D - One Grievance Representative
Squad E - One Grievance Representative
Criminal Investigation Unit - Two Grievance Representatives
Headquarters Personnel - One Grievance Representative
Middletown Facility - One Grievance Representative
Mounted Unit/Parks - One Grievance Representative
Duncan Road Sub Station - One Grievance Representative

(b) In the event that an area grievance representative is not available for the investigation and processing of grievances as specified in the grievance procedure herein due to being absent from work, an alternate from the grievance representative's area or the Chairperson of the Grievance Committee may be appointed by the President of the local FOP to serve until the area representative shall return. The President of the FOP shall notify the Chief of Police and the Chief Human Resources Officer, in writing, of such alternate's appointment and the term thereof, in order that County Government management personnel involved in the grievance procedure will give recognition to the alternate.

(c) Increase or decrease of employment in the department or as divisions, sections, units or squads are added or deleted, the County and the FOP shall make necessary adjustments in the number of grievance representatives. Adjustments shall be made by Agreement of the County Chief Human Resources Officer and the FOP.

In the event that a section, unit or squad is located in such a manner as to be inaccessible to a grievance

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JILL CONNOR, | § § | |
| Plaintiff, | § § | C.A. Number: 07-366 GMS |
| v. | § § § | |
| NEW C ASTLE COUNTY, GUY H. SAPP, individually and in his official capacity, and CHARLOTTE L. CROWELL, individually and in her official capacity, | § § § § § § | **Trial by Jury Demanded** |
| Defendants. | § | |

## PROPOSED ORDER

AND NOW, TO WIT, this _____ day of _____, 2007, the Court having considered Defendants' Motion to Stay, and all parties having had the opportunity to be heard,

NOW THEREFORE, it is ORDERED, ADJUDGED and DECREED:

1. Motion to Stay is denied; and

2. Costs in an amount to be determined by the Court assessed against Defendants.

_____
J.